UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA HALPERIN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 11 C 9076 |
| ) | Hon. Marvin E. Aspen |
| MERCK, SHARPE & DOHME CORP. and ) | |
| H.D. SMITH WHOLESALE DRUG CO., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge:

In this products liability action, originally filed in the Circuit Court of Cook County, Illinois, Plaintiffs allege that they suffered catastrophic personal injuries (and for some, death) as a result of their ingestion of the prescription drug Fosamax. Plaintiffs generally allege that Defendant Merck, Sharpe & Dohme Corp. ("Merck") "designed, manufactured, marketed, advertised, distributed and sold Fosamax," (Compl. ¶ 11) while Defendant H.D. Smith Wholesale Drug Co. ("H.D. Smith") served as a wholesale drug distributor of Fosamax (*id.* ¶ 12). Plaintiffs' complaint asserts claims against Defendants for strict liability, negligence, and breaches of warranty.

Presently before us are three motions: (1) Plaintiffs' motion for remand to state court for lack of subject matter jurisdiction; (2) Merck's motion to stay the proceedings pending transfer of the case by the Judicial Panel on Multidistrict Litigation ("JPML") into a multi-district litigation action in the District of New Jersey; and (3) H.D. Smith's motion to dismiss the claims against it. As we find Plaintiffs' motion to remand to be dispositive, we need not address the remaining motions filed by Merck (Dkt. No. 7) and H.D. Smith (Dkt. No. 11). For the reasons

set forth below, we grant Plaintiffs' motion and remand this case to the Circuit Court of Cook County.

## STANDARD OF REVIEW

Defendants can remove cases filed in state court to federal court pursuant to 28 U.S.C. § 1441(a) when: (1) the plaintiff properly commenced the action in state court; and (2) the federal court has original jurisdiction. *See Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 248 (7th Cir. 1981). A federal court has original jurisdiction where diversity of citizenship exists among all parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. LA Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009); *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 549 (7th Cir. 2004) ("[T]he party seeking to invoke federal jurisdiction . . . bears the burden of demonstrating that removal is proper."); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) ("Any doubt regarding jurisdiction should be resolved in favor of the states."); *Alsup v. 3–Day Blinds, Inc.*, 435 F. Supp. 2d 838, 841 (S.D. Ill. 2006). Here, Defendant Merck, a citizen of New Jersey, removed the case based on diversity jurisdiction on December 21, 2011. (Notice of Removal ¶ 14.) Merck premised its removal on the theory that H.D. Smith, an Illinois citizen, was fraudulently joined in this matter. (*Id.* ¶¶ 15–18.)

"Diversity jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). As Merck asserted in its removal, "[i]n determining whether there is diversity of citizenship, parties

fraudulently joined are disregarded." *Id.* Fraudulent joinder can be established in two ways: (1) by showing that "there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court," or (2) by demonstrating that there was actual fraud in the plaintiff's pleading of jurisdictional facts. *Id.* Defendants have not argued that Plaintiffs fraudulently pled the jurisdictional facts. Accordingly, they "must show that after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992) (emphasis in original). In other words, "the district court must ask whether there is any reasonable possibility that the plaintiff could prevail against the non-diverse defendant." *Schur*, 577 F.3d at 764 (internal quotation omitted); *Poulos*, 959 F.2d at 73 (describing the analysis as an "act of prediction" whereby the court considers "if there is any reasonable possibility that a state court would rule against the non-diverse defendant"). The burden of establishing fraudulent joinder is heavy, resting with the out-of-state defendant seeking removal. *Poulos*, 959 F.2d at 73; *see Schur*, 577 F.3d at 764. In fact, courts have repeatedly stated that the test for fraudulent joinder is even more favorable to the plaintiff than the standard for deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Schur*, 577 F.3d at 764 (collecting cases); *see also Whelchel v. Briggs & Stratton Corp.*, No. 11 C 4595, 2012 WL 404499, at *4 (N.D. Ill. Feb. 7, 2012); *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 847 (S.D. Ill. 2006).

## ANALYSIS

In their oppositions to Plaintiffs' motion, as well as the briefing for their own motions, Defendants raise a number of arguments as to why the case against H.D. Smith must fail and

diversity jurisdiction therefore exists. Many of these arguments focus on Plaintiffs' failure to warn and breach of warranty claims against Defendants. After careful review of all the materials before us, we focus on Plaintiffs' strict liability design defect claim against H.D. Smith and find that it that deprives us of jurisdiction. As a result, we will not address the merits of the parties' additional arguments, including Defendants' contention that Plaintiffs' claims based on failure to warn are preempted pursuant to *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011) (holding that plaintiffs' state law failure to warn claims against generic manufacturers were preempted), or precluded by the learned intermediary doctrine pursuant to *Walton v. Bayer Corp.*, 643 F.3d 994 (7th Cir. 2011) (applying the doctrine to pharmacies because they have no duty to warn about all the potential side effects of a drug unless they have independent knowledge of a particular customer's susceptibilities).

**A.    The Design Defect Allegations**

Despite Defendants' insistence (*see* H.D. Smith Reply ISO Mot. to Dismiss at 2–3, Merck's Resp. Opp'n Mot. to Remand n.3), the complaint plainly includes a state law strict liability claim based on defective design against H.D. Smith as well as Merck. Under longstanding Illinois law, a plaintiff pursuing a strict liability claim for design defect must allege: "(1) a condition of the product as a result of manufacturing or design, (2) that made the product unreasonably dangerous, (3) and that existed at the time the product left the defendant's control, and (4) an injury to the plaintiff, (5) that was proximately caused by the condition." *Mikolajczyk v. Ford Motor Co.*, 231 Ill.2d 516, 543, 901 N.E.2d 329, 345 (Ill. 2008); *see Sollami v. Eaton*, 201 Ill.2d 1, 7, 772 N.E.2d 215, 219 (Ill. 2002); *see, e.g.*, *Suvada v. White Motor Co.*, 32 Ill.2d 612, 618–21, 210 N.E.2d 182, 186–87 (Ill. 1965). Here, Plaintiffs allege that Merck

-4-

designed and manufactured Fosamax, which failed to perform safely when used by ordinary consumers as intended, or in a reasonably foreseeable manner, due to its defective nature. (Compl. ¶¶ 11, 13, 43–48, 53, 82, 128; *see also id.* ¶¶ 21–39 (alleging Fosamax's dangerous propensities as a biphosphonate, as well as Merck's failures to recognize those dangers, conduct studies and surveillance, and warn of the side effects)).) H.D. Smith distributed and sold the defective Fosamax ingested by Plaintiffs and thus "was a merchant in the chain of distribution." (*Id.* ¶¶ 1, 8, 12. 54, 81, 127.) Plaintiffs further allege that the Fosamax manufactured by Merck and distributed by H.D. Smith "was expected to reach and did reach consumers . . . without substantial change in the condition in which it was manufactured and sold." (*Id.* ¶ 43.) Finally, Plaintiffs allege that, as a direct and proximate result of their long-term use of Fosamax, they suffered suppressed bone turnover, femur fractures, severe mental and physical pain and suffering, permanent injuries, and emotional distress. (*Id.* ¶¶ 46–48; *see also id.* ¶¶ 57, 84–85, 130–31.) These allegations speak to each of the required elements of a strict liability design defect claim against Defendants.

Merck concedes that Plaintiffs assert a design defect claim against it but contends that the complaint does not articulate such a claim against H.D. Smith because H.D. Smith did not "design" Fosamax. (*See* Merck Opp'n at 5 n.3.) This argument disregards well-settled Illinois precedent holding that "all entities in the distributive chain of an allegedly defective product, including manufacturers, sellers, wholesalers, distributors and lessors of the product, are strictly liable in product liability actions for injuries resulting from that product." *Murphy v. Mancari's Chrysler Plymouth, Inc.*, 381 Ill. App. 3d 768, 772–73, 887 N.E.2d 569, 574 (1st Dist. 2008) (citing *Kellerman v. Crowe*, 199 Ill.2d 111, 113, 518 N.E.2d 116, 117 (Ill. 1987)). Strict liability

attaches to all links in the distributive chain, without regard to a particular link's knowledge or culpability, because the "focus in a strict liability action is on the product." *Murphy*, 381 Ill. App. 3d at 773, 887 N.E.2d at 574–75. Thus, the "inability of a defendant to know of or prevent the risk is not a defense because fault is not an issue." *Id.* at 772, 887 N.E.2d at 574. Under Illinois law, and barring certain circumstances discussed below, H.D Smith may be liable to Plaintiffs based on Fosamax's alleged design defect despite the fact that it had no role in the actual design process.

H.D. Smith, however, contends that the Supreme Court's decision in *Mensing* must be extended here to bar any design defect claim asserted by Plaintiffs. (H.D. Smith Reply ISO Mot. to Dismiss at 4–5.) In *Mensing*, the Court considered whether federal law preempted state tort failure to warn claims brought against generic drug manufacturers. The Court found that applicable state laws imposed a duty on all drug manufacturers (brand name and generic) to adequately label their products, while federal regulations prohibited generic drug manufacturers from altering the drug safety labels established by the brand name manufacturer with the Food and Drug Administration ("FDA"). *Mensing*, 131 S. Ct. at 2577. The state law claims based on failure to warn were thus preempted because the generic drug manufacturers could not fulfill both their state law duty to provide a safer, better label for consumers and their federal duty to use only the FDA-approved label, without independent modification. *Id.* at 2577–78. H.D. Smith argues that this reasoning applies with equal force to design defect claims because, as a distributor, it had no authority or duty to alter the allegedly defective design of Fosamax. (H.D. Smith Reply ISO Mot. to Dismiss at 4–5.) We disagree.

Neither the *Mensing* opinion, nor the underlying proceedings in the Fifth and Eighth

Circuits, directly address strict liability design defect claims. Moreover, while H.D. Smith's argument has some intuitive appeal, it again ignores governing principles of strict liability. Illinois law does not base H.D. Smith's potential liability on any failure to comply with a state law duty, like the affirmative duty to warn at issue in *Mensing*. As discussed earlier, strict liability based on a design defect generally applies to all entities in the chain of commerce—including distributors—regardless of culpability, duty, knowledge, or fault. *Murphy*, 381 Ill. App. 3d at 772–73, 887 N.E.2d at 574–75. Stated more simply: H.D. Smith is not being sued for violating a state law duty to design safe pharmaceuticals and, thus, no conflict arises.[1] Ultimately, even if we were inclined to agree with H.D. Smith about the reach of the *Mensing* decision, we are bound to resolve such an open question of law in Plaintiffs' favor when assessing the remand motion. *Poulos*, 959 F.2d at 73. For these reasons, we conclude that Plaintiffs "could establish a cause of action against" H.D. Smith. *Id.*

**B.    Applicability of § 2-621 to H.D. Smith**

The primary issue before us, as argued in earnest by H.D. Smith, is that the claims against it must fall because it has availed itself of a state law mechanism that allows nonmanufacturers to avoid strict liability. (Mot. to Dismiss at 5–8; H.D. Smith Reply ISO Mot.

---

[1] The factual background here thus differs from the facts in the cases cited by H.D. Smith. For example, H.D Smith refers us to *In re Fosamax (Alendronate Sodium) Products Liab. Litig. (No. II)*, No. 08-008, 2011 WL 5903623, at *6 (D.N.J. Nov. 21, 2011) for the proposition that *Mensing* applies to design defect claims. There, however, the plaintiffs alleged that the defendant generic manufacturers should have designed the "alendronate sodium . . . differently to comply with state tort law." *Id.* *6. No such allegations are made here against H.D. Smith, a distributor. Moreover, our research indicates that most of the courts in other jurisdictions who have dismissed design defect claims against generic manufacturers under *Mensing* have done so where they find the allegations to be repackaged or thinly-veiled failure to warn claims, or where the plaintiff has blatantly failed to state a claim under Rule 12(b)(6). We do not find such reasoning persuasive here, however, where the complaint raises strict liability design defect claims apart from the failure to warn claims.

to Dismiss at 7–10; H.D. Smith Opp'n Mot. to Remand at 11–15.) Pursuant to 735 ILCS 5/2-621—commonly known as the "seller's exception" though equally applicable to distributors—"a nonmanufacturer defendant in a strict product liability action may be dismissed from the action if it certifies the correct identity of the manufacturer of the product which allegedly caused the injury." *Murphy*, 381 Ill. App. 3d at 773, 887 N.E.2d at 574–75; *see* 735 ILCS 5/2-621(a)–(b); *Lamkin v. Pace*, 138 Ill.2d 510, 531–33, 563 N.E.2d 449, 458–59 (Ill. 1990); *Whelchel*, 2012 WL 404499, at *5. Once the nonmanufacturer defendant has filed the necessary affidavit and the statutory prerequisites are met, dismissal of that defendant is mandatory unless the plaintiff can show that the seller or distributor "(1) participated in the design or manufacture of the product, (2) had actual knowledge of the defect in the product, or (3) created the defect in the product." *Whelchel*, 2012 WL 404499, at *5; *Lamkin*, 138 Ill.2d at 532–33, 563 N.E.2d at 459; *Murphy*, 381 Ill. App. 3d at 770–71, 887 N.E.2d at 573–74; *see* 735 ILCS 5/2-621(a)–(c). In addition, even after dismissal of a nonmanufacturer defendant, the plaintiff may reinstate the action in certain circumstances, including *inter alia*, where the plaintiff can show that the statute of limitations bars the claim against the manufacturer or the manufacturer is judgment proof. 735 ILCS 5/2-621(b); *Murphy*, 381 Ill. App. 3d at 771, 887 N.E.2d at 573 ("A plaintiff may move at any time for reinstatement of a previously dismissed defendant if an action against the product manufacturer would be impossible or unavailing."); *see Kellerman*, 199 Ill.2d at 114, 518 N.E.2d at 118.

In an effort to extricate itself from these proceedings under § 2-621—and thereby eliminate the fraudulent joinder question—H.D. Smith submitted affidavits from a corporate vice president, Thomas Twitty. (1/11/12 Twitty Aff. (Dkt. No. 11-1) & 1/25/12 Suppl. Twitty Aff.

(Dkt. No. 22-1).) In his initial affidavit, Mr. Twitty identifies Merck as the manufacturer of the drug. (1/11/12 Twitty Aff. ¶ 9.) Mr. Twitty states that H.D. Smith did not manufacture, design or create Fosamax. (1/11/12 Twitty Aff. ¶¶ 8–14; 1/25/12 Suppl. Twitty Aff. ¶¶ 17–23.) He also states that H.D. Smith had no knowledge of the alleged defects of, or dangers posed by, Fosamax. (1/11/12 Twitty Aff. ¶¶ 8–14; 1/25/12 Suppl. Twitty Aff. ¶¶ 22–23, 26, 28.) On their face, the affidavits would appear to satisfy the statutory requirements of § 2-621 and, moreover, refute Plaintiffs' allegation that "H.D Smith knew or should have known of the dangerous propensities of Fosamax." (*See* Compl. ¶ 82). According to H.D. Smith, it is thus entitled to dismissal under § 2-621, leaving Merck to its own devices here in federal court.

The parties contest whether Plaintiffs' allegations are sufficient for purposes of § 2-621(c)(2) to survive Mr. Twitty's disavowals on behalf of H.D. Smith. We need not reach that issue today, however.[2] As described earlier, § 2-621(b) permits a plaintiff at any time to seek reinstatement of a previously-dismissed nonmanufacturer defendant if the statute of limitations bars the claim against the manufacturer. 735 ILCS 5/2-621(b)(1). For us, the question boils

---

[2] Plaintiffs contend that remand is required because dismissal of H.D. Smith under § 2-621(b), even if appropriate, is not a final order given the lingering possibility that H.D. Smith will be recalled as a nondiverse defendant in the future. (Mot. for Remand at 9; Reply ISO Mot. for Remand at 7.) As noted by the parties, judges within the Northern District have come out on both sides of this issue. For example, several courts have held that § 2-621 "cannot be the basis for fraudulent joinder because any dismissal is merely conditional." *Kopitke v. Depuy Orthopaedics, Inc.*, No. 11 C 912, 2011 WL 856865, at *3 (N.D. Ill. Mar. 8, 2011) (collecting cases). At least three judges have recently found, however, that Plaintiffs' categorical view "does not square with the fraudulent joinder test adopted by *Poulos*," which "requires application of the reasonable possibility test to each case." *Steel v. Ford Motor Co.*, No. 11 C 460, 2011 WL 1485380, at *5 (N.D. Ill. Apr. 19, 2011); *Whelchel*, 2012 WL 404499, at *5–6; *Shi v. Am. Honda Motor Co.*, No. 11 C 2682, 2011 WL 5403618, at *2 (N.D. Ill. Nov. 8, 2011). We need not weigh in on this debate in light of our ruling that the particular facts present here warrant remand, regardless of the nature of a § 2-621 dismissal.

down to "whether there is a 'reasonable possibility' that the Plaintiff[s] will be unable to recover from the manufacturer for one of the reasons stated in § 2-621(b)."[3] *Whelchel*, 2012 WL 404499, at *6; *see Poulos*, 959 F.2d at 73. Here, Merck has expressly pled as its first affirmative defense that "each and every claim asserted or raised in the Complaint is barred by the applicable statute of limitations." (Merck Ans. at 27 ¶ 1.) At this point in the lawsuit, we have no cause to question the reasonableness of Merck's statute of limitations defense. If Merck is successful (as we assume it intends to be), Plaintiffs can at any time drag H.D. Smith back into the foray, where it may be strictly liable for injuries caused by the product Merck designed. On these facts, Merck cannot meet its heavy burden of showing that there is no reasonable possibility that H.D. Smith will be reinstated by operation of § 2-621(b)(1), thus destroying diversity. *Schur*, 577 F.3d at 764; *Poulos*, 959 F.2d at 73. Because Merck has failed to establish fraudulent joinder, we lack jurisdiction over this matter.

                                                  Marvin E. Aspen
                                                  United States District Judge

Dated: Chicago, Illinois
        April 10, 2012

---

[3] The parties dispute several ancillary issues about H.D. Smith's claim for dismissal under § 2-621, including, for example, how heavily we may rely on affidavits at this stage and whether the § 2-621 analysis matters here because jurisdiction is evaluated at the time of removal and the claim for dismissal based on Mr. Twitty's affidavits arose after removal. (*See* Mot. to Remand at 9; Reply ISO Mot. to Remand at 1–2, 8.) Though interesting, these arguments are not germane to our analysis.

## CONCLUSION

For the reasons set forth above, and bearing in mind that we resolve all doubts about our jurisdiction in favor of remand, we grant Plaintiffs' motion. This case is hereby remanded to the Circuit Court of Cook County, Illinois. Defendants' pending motions are stricken. It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: April 10, 2012